IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TINA AMSTADT,

                Plaintiff,

v.

NEUGEN, LLC,

                Defendant.

OPINION and ORDER

20-cv-440-jdp

---

Plaintiff Tina Amstadt worked in defendant NeuGen LLC's finance and accounting department for two years, until NeuGen terminated her employment. Amstadt asserts three claims under the Americans with Disabilities Act (ADA): (1) NeuGen fired her because she suffers from migraines; (2) NeuGen fired her because she requested reasonable accommodations for her migraines; and (3) NeuGen failed to provide reasonable accommodations for her migraines.

NeuGen moves for summary judgment on all of Amstadt's claims. Amstadt's migraine condition does not shield her from the consequences of performing poorly at work, and NeuGen has adduced ample evidence that Amstadt did not meet its performance expectations. No reasonable jury could find that NeuGen terminated Amstadt's employment because of her migraines rather than her performance or attitude, or that NeuGen failed to accommodate her migraine condition. The court will grant NeuGen's motion and dismiss the case.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted; the court will discuss additional facts specific to each claim in its analysis below. Tina Amstadt suffers from a chronic

migraine condition. In May 2017, she began working as a budget and compliance analyst in NeuGen's finance and accounting department, which was formerly housed in the Wisconsin Education Association Trust. Amstadt's direct supervisor was Glenn Soule, manager of finance and Accounting; Soule reported to Dawn Witek, vice president of finance and accounting.

One of Amstadt's primary duties at NeuGen was to prepare the company's annual statements and statutory filings for submission to the Wisconsin Office of the Commissioner of Insurance (OCI). The annual statement is due on March 1 and the statutory filings are due on April 1 of each year.

Amstadt first worked on the statement and filings in 2018. NeuGen almost missed the deadlines, which the company attributes to Amstadt's poor performance. At Amstadt's quarterly review in late April, Soule gave her a rating of "needs improvement." Dkt. 17-2. The performance review identified several deficiencies with Amstadt's work: she began her work on the filings too late, did not complete sections of the statement, was not forthcoming about her progress, and made errors. *Id.* Amstadt acknowledged that she had room for improvement in a written response to the review. But she also defended herself, saying that the filings were new to her so she didn't how long they would take, and that Soule routinely asked her to do other work. Dkt. 17-3.

Soule placed Amstadt on a formal 60-day performance improvement plan on May 4. The plan noted many of the same performance deficiencies that Soule discussed with Amstadt at her performance review. Dkt. 17-4. The plan also stated that Amstadt could be subject to termination if she failed to improve the quality of her work. Soule and Amstadt met biweekly over the next two months, and on June 25, 2018, Soule informed Amstadt that she had satisfied the goals of the plan. Dkt. 17-5.

NeuGen hired Jim Zander, an outside contractor, to do some projects in the Accounting and Finance Department in fall 2018. Zander was responsible for reconciling errors in NeuGen's financial data sets, which Amstadt also managed. He noticed database maintenance problems that Amstadt was responsible for. When Zander told Soule about the issues that he noticed, Soule was frustrated, but he didn't discuss his concerns with Amstadt.

Amstadt began preparing NeuGen's 2019 annual statement and statutory filings in January 2019. At that time, her migraines were getting worse, and her doctors began to consider new treatment options. Amstadt had a migraine and missed work on January 14. She also missed work for a migraine on March 1, which was the day that NeuGen's annual statement was due to OCI. Soule filled in for Amstadt and submitted the statement on time. Later that month, Amstadt had another migraine and took three days off work, from March 18 to March 21. On March 20, she submitted a request to NeuGen for intermittent FMLA leave to address her condition.

Amstadt continued to work on the statutory filings that were due on April 1. On March 27, Amstadt told Soule that she would have to find a new job if the April statutory filings remained her responsibility. She also told him that she "didn't get paid enough to do this shit." Dkt. 17 (Amstadt Dep. 119:13–15). NeuGen met the April 1 deadline, but Soule says that he was dissatisfied with her work. Amstadt denies that her work was deficient, says that Soule told her that she did a good job, and attributed Soule's frustration to the fact that he had to cover for her while she was out with a migraine.

On April 4, NeuGen approved Amstadt for intermittent FMLA leave, which allowed her to take off a maximum of 12 weeks over the next 12 months. Dkt. 17-13. On April 10, Amstadt told Soule that the April statutory filings were stressful for her and that it would be a

long time before she could handle them on her own. She also asked him if she could move into an accounting position that was included in NeuGen's 2019 budget, saying that she was interested in the role because it had fewer job responsibilities and would be less stressful. The parties dispute whether Amstadt said that she wanted the new position to accommodate her migraines. Dkt. 25, ¶ 72. The next day, Amstadt took the morning off for a migraine treatment.

At around the same time, an auditing firm hired by NeuGen completed its 2019 audit of NeuGen's financial statements. Auditors reviewed footnotes that Amstadt had prepared and identified "material weaknesses" with her recording of investments. Dkt. 15-2. The auditors informed Witek about the problems, first verbally and then in a draft report emailed to her on May 9. *Id.* Neither Soule nor Witek relayed the auditors' findings to Amstadt. But later in April, Soule and Witek met to discuss the possibility of terminating Amstadt because they were not convinced that her skills were a match for her position.

On May 1, 2019, NeuGen terminated Amstadt. Amstadt asserts that Soule told her only that she was not meeting performance expectations, but Soule says that he provided her with four specific reasons that she was being let go: (1) her performance on the annual statement and statutory filings was unsatisfactory: (2) audits revealed gaps in her work that put NeuGen at risk; (3) Amstadt told him that it would be a long time before she could complete the March 1 filings herself; and (4) Amstadt told Soule that she would have to look for another job if she remained responsible for the April 1 filings.

ANALYSIS

Amstadt raises three claims under the ADA: (1) NeuGen discriminated against her on the basis of her disability by terminating her from her job; (2) NeuGen retaliated against her for requesting accommodations; and (3) NeuGen failed to accommodate her disability.

Summary judgment on Amstadt's claims is appropriate if NeuGen "shows that there is no genuine dispute as to any material fact" over whether NeuGen violated the ADA, "and [NeuGen] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, Amstadt "must set forth specific facts showing that there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "produce sufficient admissible evidence, taken in the light most favorable to [her], to return a jury verdict in [her] favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). A court may consider only admissible evidence in assessing a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

Amstadt offers two main reasons why she believes that NeuGen discriminated against her. First, her managers didn't tell her that they were dissatisfied with her work or that her job was at risk. Second, the timing of her termination was suspicious because NeuGen fired her less than a month after she requested FMLA leave and asked to be moved to a different accounting position. For reasons explained below, these reasons are not sufficient to forestall summary judgment for NeuGen.

**A. ADA discrimination claim**

The ADA prohibits workplace discrimination on the basis of disability. 42 U.S.C. § 12112(a). To establish a discrimination claim, Amstadt must prove three elements: (1) she is disabled; (2) she is qualified to perform the essential functions of the job with no more than

reasonable accommodation; and (3) she suffered an adverse job action because of her disability. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015). To establish the third element, Amstadt must show that she would not have been terminated "but for" her disability. *Id*. The ultimate question is whether a reasonable jury could find that NeuGen would have continued to employ Amstadt if she was not disabled and everything else had remained the same. *Graham v. Arctic Zone Iceplex, LLC,* 930 F.3d 926, 929 (7th Cir. 2019); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016).

NeuGen concedes that Amstadt's migraines qualify as a disability for the purpose of its motion for summary judgment. The parties dispute whether Amstadt could perform the job with a reasonable accommodation, but the court need not address that issue because Amstadt falters on the third element, causation. NeuGen adduces undisputed evidence that Amstadt performed poorly at her job and lacked enthusiasm.

Soule first noted concerns with Amstadt's work on NeuGen's 2018 annual statement and statutory filings. Soule testified in his declaration that she didn't start the work early enough, fully complete the statement, communicate with Soule about her progress, or ask questions—all of which caused NeuGen to almost miss the filing deadline. Soule placed her on a PIP as a result. Amstadt attributed her shortcomings on the statement and filings to Soule's management style and to the fact that she was new to the job. But she doesn't dispute the deficiencies that he identified, and she acknowledges that her work on the 2018 statement and filings could have been better.

Zander, the outside contractor, also pointed out problems with Amstadt's work. He found database errors that he believed Amstadt should have caught, files that she improperly uploaded into NeuGen's budgeting system, and errors in the company's quarterly partnership

6

reconciliations. As a result, Zander had to correct and redo Amstadt's work. Soule stated in his declaration that he was "frustrated by Ms. Amstadt's performance related to the budget and the reconciliation issues that Mr. Zander brought to my attention. As a result of these issues, among others, I had concerns that Ms. Amstadt did not fully understand the intricacies behind the work she performed." Dkt. 14, ¶ 9. Amstadt says that Zander's observations are not supported by admissible evidence because his testimony is speculative. But Zander's declaration is based on his time working in NeuGen's finance and accounting department, so he has personal knowledge of the facts in his testimony. Zander's observations are undisputed.

Third-party auditors also identified problems with Amstadt's performance on NeuGen's 2018 and 2019 year-end financial statements. NeuGen adduces a memo from the auditors to Witek that outlines the issues that they found: improperly recorded investments, errors, and incomplete footnote entries. Dkt. 15-2. Witek asserts in her declaration that auditors had identified similar weaknesses in Amstadt's work during its 2018 audit. Dkt. 15, ¶ 15. Both Witek and Soule testified that the audit findings factored into their decision to terminate Amstadt's employment. Amstadt contends that the auditor's memo and emails to Witek are not authenticated. But Witek personally received the documents and testified in her declaration that they are authentic. So NeuGen's audit results are not genuinely disputed, either.

NeuGen contends that Amstadt also performed poorly on the 2019 statement and filings. Specifically, Soule testified that she needed his assistance with footnotes, left a major filing incomplete, sent budget information to managers in other departments late, and was unable to complete the April 1 filing on her own. Dkt. 18 (Soule Dep. 59:1–60:13). Amstadt

7

disputes that her work on the 2019 filings was deficient and contends that some of Soule's frustrations may have arisen because she had to miss work for her migraines. Dkt. 26, ¶ 103.

Amstadt's dispute over the quality of her performance on the 2019 filings is not sufficient to overcome summary judgment. First, NeuGen has adduced sufficient undisputed evidence of legitimate performance concerns stemming from *other* projects and responsibilities. Second, in evaluating whether an employer discriminated, the question is not whether the employer's given reasons for dismissal were accurate or fair, but whether the reasons were pretextual, meaning they were "a lie, specifically a phony reason for some action." *McCann v. Badger Mining Corp.*, 965 F.3d 578, 589 (7th Cir. 2020) (quotations omitted). Amstadt has, at most, suggested that Soule's assessment of her performance was unfair. But federal courts "do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir.2003). Amstadt does not adduce any evidence that Soule's evaluation was dishonest or false, so she has not demonstrated that the evaluation of her performance on the 2019 filings was a pretext for discrimination.

An employee's "apparent bad attitude" about their position can be a legitimate basis for termination, *Arctic Zone*, 930 F.3d at 929, and Amstadt made negative comments about her job in addition to not meeting performance expectations. On March 27, Amstadt told Soule that she would have to find a new job if the April statutory filings remained her responsibility. She also told him that she "didn't get paid enough to do that shit." Dkt. 17 (Amstadt Dep. 119:13–15). On April 10, Amstadt told Soule that the April statutory filings stressed her out and that it would be a long time before she could handle them on her own. Amstadt doesn't dispute that she made any of these statements. Soule testified that her comments made him

8

think that she was disdainful of her job and signaled that she would continue to struggle in her role. Dkt. 14, ¶ 13.

Amstadt's main argument is that no one at NeuGen informed her that she was performing poorly or that her job was on the line, which Amstadt contends is enough to raise a genuine dispute about the reason for her termination. An employer is not required to warn an employee that her actions or deficient performance could result in dismissal. But if an employer provides no warning about performance concerns, it might suggest that poor performance was a pretext for discrimination, especially if the performance concerns appear out of the blue. *See Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 692 (7th Cir. 2007). In *Peirick*, for example, the court concluded that an employer's performance-related reasons for firing an employee were not believable because the employer hadn't raised performance concerns with anyone, including the employee or other supervisors, until the employee took legal action. *Id*.

But NeuGen's reasons for terminating Amstadt didn't come out of the blue. Amstadt had a history of performance issues at NeuGen. Soule and Witek had discussions as early as February and in April about whether to fire Amstadt because of her performance. And a few days before terminating Amstadt, Soule told human resources in an email that he and Witek made the decision to let Amstadt go "based on a number of reasons directly related to her performance in the position . . . Fundamentally, she has expressed in her own words that she would never be able to complete a key responsibility of the position on her own." Dkt. 14, ¶ 14.

NeuGen didn't always address Amstadt's performance issues with her as they arose, but that does not mean that NeuGen "forfeited its right to count these problems as black marks

9

on [her] record. An employer's decision to let something slide without a formal response does not mean that it went unnoticed or untallied. And even minor grievances can accumulate into a record that justifies termination." *Arctic Zone*, 930 F.3d at 929.

Amstadt does not explicitly raise "suspicious timing" in connection with her ADA discrimination claim, as she does in connection with her ADA retaliation claim. But as the court discusses below, timing alone is generally insufficient to demonstrate pretext, and new concerns about Amstadt's performance came to light shortly before NeuGen fired her. The timing of her termination is not suspicious.

In sum, NeuGen has demonstrated numerous valid reasons for terminating Amstadt that are not related to her migraines. And Amstadt hasn't adduced direct or circumstantial evidence that those reasons for dismissing her—performance and attitude—were pretext for discrimination. No reasonable jury could find that she would not have been fired but for her migraines.

## B. ADA retaliation claim

Amstadt contends that NeuGen terminated her in retaliation for requesting FMLA leave and for asking to be transferred to a different role. The ADA prohibits employers from retaliating against employees who assert their rights under the act. 42 U.S.C. § 12203(a). To establish a case of retaliation under the ADA, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) there is a causal connection between the two. *Dickerson v. Bd. of Trustees of Comm. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). As with ADA discrimination claims, the causation element requires a plaintiff to show but-for causation, which is to say that the plaintiff would have kept her job

if he hadn't engaged in the protected conduct at issue, and everything else had remained the same. *Rowlands v. United Parcel Serv.*, 901 F.3d 792, 801 (7th Cir. 2018).

Amstadt's ADA retaliation claim fails for the same reason that her ADA discrimination claim does. NeuGen has adduced abundant evidence of her poor performance, and Amstadt fails to show that she would have kept her job if she had not sought accommodations for her migraines. Amstadt contends that it was suspicious timing to fire her less than a month after she requested FMLA leave and less than a month after she asked to be moved to a different position. But in ADA discrimination cases, temporal proximity alone is rarely enough to preclude summary judgment. *Stone v. City of Indianapolis Pub. Utils Div.*, 281 F.3d 640, 644 (7th Cir. 2002). When viewed in light of other evidence, such as evidence of pretext, timing can raise triable issues. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Amstadt adduces no other evidence that NeuGen terminated her because she had just requested accommodations. In fact, NeuGen dismissed Amstadt at around the same time that auditors completed their 2019 audit and identified problems with her work for the second year in a row. So in the broader context of Amstadt's employment, the timing of her dismissal was not suspicious.

Amstadt does not dispute NeuGen's evidence of her performance issues or show that NeuGen's performance concerns were pretextual. No reasonable jury could find that but for her request for FMLA leave or to be moved to a different position, NeuGen would not have terminated her employment.

C. ADA accommodation claims

Amstadt contends that NeuGen failed to accommodate her migraine condition when it refused to transfer her to a different position with less responsibility. The ADA requires

11

employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). To establish a claim for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 682 (7th Cir. 2014).

The parties do not dispute that Amstadt had a disability that NeuGen was aware of, so the central question is whether NeuGen failed to reasonably accommodate Amstadt's migraines. The ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position. *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 291 (7th Cir. 2015); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996). But an employer's reassignment obligation is limited to vacant positions. *Stern*, 788 F.3d at 291. An employer is not required to create a vacancy or open a position for the disabled employee. *Id.*

The accounting position that Amstadt identified was not vacant. Amstadt stated in her deposition that the position was included the 2019 budget and had been approved by the board. Dkt. 17 (Amstadt Dep. 133:1–5). She also said that there had been internal discussions about the duties of the new position. But NeuGen still has not formally opened the position, created an official job description, or posted the job for hiring. And Witek states in her declaration that NeuGen's Accounting and Finance Department did not have any other openings between January 1 and May 1, 2019. So NeuGen did not fail to accommodate

Amstadt's disability by declining to move her to a position that had not been formally created. NeuGen otherwise reasonably accommodated Amstadt's migraine condition by granting her time off as she needed it, and by approving her request for intermittent FMLA leave. *See Murray v. AT&T Mobility LLC,* 374 F. App'x 667, 671 (7th Cir. 2010) (a reduced work schedule and intermittent FMLA leave can both be reasonable accommodations under the ADA). Amstadt hasn't adduced evidence that there was a reasonable accommodation for her migraines that NeuGen failed to provide.

ORDER

IT IS ORDERED that:

1. Defendant NeuGen LLC's motion for summary judgment, Dkt. 11, is GRANTED.

2. The clerk of court is directed to enter judgment in favor of NeuGen and close this case.

Entered July 7, 2021.

BY THE COURT:

/s/
_____

JAMES D. PETERSON
District Judge